KIEWIT/ATKINSON/KENNY, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 103, AFL–CIO, Defendant.

No. Civ.A. 97–12281–GAO.

United States District Court, D. Massachusetts.

Nov. 17, 1999.

Richard D. Wayne, Hinckley, Allen & Snyder, Boston, MA, for Kiewit/Atkinson/Kenny.

Ira Sills, Segal, Roitman & Coleman, Boston, MA, for International Broth. of Elect. Workers, Local 103, AFL–CIO, Richard W. Reid, Francis Angino.

David J. Hatem, David S. Branch, Burns & Levinson, Boston, MA, for ICF Kaiser Engineers Massachusetts, Inc.

Richard Goldstein, Boston, MA, for Massachusetts Water Resources Authority.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff Kiewit/Atkinson/Kenny ("Kiewit"), a joint venture of three construction firms, is a contractor employed by the Massachusetts Water Resources Authority ("MWRA") to perform work on the Boston Harbor Cleanup Project. Acting through its construction manager, Kaiser Engineers, Inc., the MWRA required Kiewit to agree to a Project Labor Agreement ("PLA"), which in turn incorporated the local multi-employer collective bargaining agreement of the defendant International Brotherhood of Electrical Workers, Local 103, AFL–CIO ("IBEW"). In the present action, Kiewit seeks to vacate an arbitrator's decision that resolved a union grievance in favor of the IBEW.[1]

The IBEW has moved for summary judgment on its counterclaim to confirm the arbitration award. Among other things, the counterclaim contends that Kiewit's complaint for an order vacating the arbitration award is without merit.

### Background

Kiewit's contract required it to build an effluent tunnel for the Boston Harbor Cleanup Project. Kiewit subcontracted the electrical work on the project to a joint venture of the Massachusetts Electric Construction Company and the Reid Electric Construction Company ("Mass/Reid").

The relevant dispute arose on April 19, 1996, when two Mass/Reid electricians left their work station in the tunnel. Kiewit contends the electricians left without permission, not only causing it to incur extra costs, but also potentially endangering oth-

---

1. Previously, this Court found that Kiewit's additional contention that the PLA violated the Sherman Anti–Trust Act, 15 U.S.C. § 1 et seq., did not state a claim upon which relief could be granted. See Kiewit/Atkinson/Kenny v. International Bhd. of Elec. Workers, Local 103, 43 F.Supp.2d 132, 135 (D.Mass.1999).

er employees. One of the electricians involved was transferred off the job site. As a result, the IBEW ultimately filed unfair labor practice charges against Kiewit and Mass/Reid.

The grievance was submitted to arbitration. In accordance with the practice under the PLA, the arbitrator was chosen from a pre-approved list. For reasons discussed in greater detail below, the first arbitrator named was later succeeded by another, who actually rendered the decision at issue. At the arbitration hearing, Kiewit and Mass/Reid sought unsuccessfully to disqualify the second arbitrator. The arbitrator declined to recuse himself and subsequently found in favor of the IBEW.

Kiewit's complaint seeks to vacate the arbitration award on three independent grounds: that the arbitrator was biased, that he committed misconduct by refusing to receive certain evidence, and that he exceeded the authority under the PLA and misapplied legal principles when he made certain conclusions.

### Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). For a dispute to be "genuine," "there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in the nonmovant's favor." *See Casas Office Machines, Inc. v. Mita Copystar Am. Inc.*, 42 F.3d 668, 684 (1st Cir.1994) (citing *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989)). "The evidence cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." *Casas Office Machines*, 42 F.3d at 684. For purposes of summary judgment, the Court draws all reasonable inferences from the record in the light most favorable to the nonmoving party. *See Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 986 (1st Cir.1995).

### 1. Bias of the Arbitrator

The Federal Arbitration Act ("FAA")[2] authorizes a court to vacate an arbitration award "[w]here there was evident partiality or corruption in the arbitrator[]...." 9 U.S.C. § 10(a)(2). "Evident partiality," however, means more than just an appearance of bias. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173 (2d Cir.1984). The burden is on Kiewit to provide evidence of bias sufficient for " 'a reasonable person ... to conclude that an arbitrator was partial' to the other party to the arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir.1993) (quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989)). "The alleged partiality must be 'direct, definite, and capable of

**2.** The First Circuit has recognized that arbitration under a collective bargaining agreement may be reviewed under the Federal Arbitration Act. *See, e.g., Local Union No. 251 v. Narragansett Improvement Co.*, 503 F.2d 309, 311–12, (1st Cir.1974) (applying the FAA to a collective bargaining agreement); *Electronics Corp. of Am. v. International Union of Elec., Radio and Mach. Workers, Local 272*, 492 F.2d 1255, 1258 (1st Cir.1974) (stating "[i]n directing the parties to resubmit the issues to arbi-

tration, we act within the scope of the Federal Arbitration Act ... which, we have held, applies to collective bargaining agreements"); *Local 205, United Elec., Radio and Mach. Workers of Am. v. General Elec. Co.*, 233 F.2d 85, 98–100 (1st Cir.1956) (finding the FAA applicable to arbitration actions under collective bargaining agreements), *aff'd on other grounds*, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957).

demonstration rather than remote, uncertain or speculative.'" *Peoples Sec.*, 991 F.2d at 146 (quoting *Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992)).

■ Kiewit's evidence does not satisfy this standard. First, Kiewit argues that the arbitrator had originally been recommended for inclusion on the panel of approved arbitrators by a former business agent of the IBEW, who had been one of the principal union negotiators of the PLA. It appears that the recommendation was made in 1989, several years before the arbitration at issue here. That evidence does not come close to supporting an inference that the arbitrator was partial toward the IBEW, much less the strong inference that would be necessary to justify vacating the award.[3]

Second, Kiewit argues that the arbitrator was assigned to the case only after the first arbitrator had been removed due to scheduling conflicts created by numerous delays attributable to the IBEW. How that proves that the arbitrator was biased is not clear. Even if the IBEW intentionally manufactured scheduling conflicts and delays in an effort to change arbitrators, a proposition itself not substantially supported by the evidence offered,[4] that does not prove the arbitrator himself was biased or partial. At most, it would suggest only that the IBEW preferred him to the original arbitrator.

Finally, Kiewit's assertion that it was inadequately informed about the process by which arbitrators would be selected to hear particular cases does not suggest that the arbitrator who heard this case was biased or partial. There is no evidence

offered that anyone misinformed Kiewit about the selection process. However, even if Kiewit was somehow kept in the dark about the process of selecting an arbitrator, that fact would not show bias, either in the selection process itself or in the perspective of the particular arbitrator.

Kiewit's allegations of bias are little more than conclusory assertions insufficient to raise a genuine issue of material fact. *See Fort Hill Builders, Inc. v. National Grange Mut. Ins. Co.*, 866 F.2d 11, 14 (1st Cir.1989).

### 2. Limitation of Evidence

Kiewit next contends that the arbitrator did not allow Kiewit to cross-examine the transferred employee about the basis of his complaint. Under the FAA, this Court may vacate an arbitrator's award if "the arbitrator[ ][was] guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy . . . by which the rights of any party [were] prejudiced." 9 U.S.C. § 10(a)(3). Kiewit argues that the arbitrator's failure to allow cross examination of the grievant regarding the basis for the complaint against Kiewit was highly prejudicial, and that if it had been allowed, the evidence would have proven that the complaint, at least as to Kiewit, was improper.

■ "The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st

---

**3.** It is important to note that the purported bias in this case is at least one level removed. The arbitrator is not alleged to have any direct connection to the IBEW. It is only the business agent who recommended the arbitrator who has or had such a connection. If, for example, the arbitrator himself had a direct, undisclosed, ongoing, business relationship with the IBEW, then Kiewit's allegations would have more weight. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*,

393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (concluding that an undisclosed ongoing business relationship between the arbitrator and a party needed to be disclosed). However, that is not the case here.

**4.** Kiewit was responsible for at least one of the delays. Def.'s Opp'n to Pl.'s Mot. to Vacate Award, Ex. C.

Cir.1985). It is not enough to show that there might have been better rulings made on the admission of evidence. The arbitration is not conducted in strict compliance with the rules of evidence applicable in formal litigation. The question rather is whether the arbitrator's evidentiary rulings deprived a party of an opportunity to present its case adequately. *Id.* at 40.

█ It is true that on cross examination, the arbitrator did not permit Kiewit to question the grievant about the basis of his complaint. Tr., Grievance Arbitration Hr'g, Jan. 3, 1997, Vol. 2 at 172. However, the arbitrator did allow extensive cross examination on this subject from another witness, the IBEW business agent handling the grievance. *Id.* at 292–322. Evidence from the grievant would have covered the same ground as the evidence from the business agent. "An arbitration award must not be set aside for the arbitrator's refusal to hear evidence that is cumulative." *Hoteles Condado Beach,* 763 F.2d at 40. Whether it would have been better practice for the arbitrator to have permitted the cross examination is not the issue. Kiewit was not deprived of an opportunity to present its position.

### 3. Conclusions of the Arbitrator

Kiewit contends that the arbitrator made three conclusions that exceeded his authority under the PLA: that Kiewit and Mass/Reid were estopped from contesting a time limit for filing the initial grievance, that Kiewit and Mass/Reid subjected the grievant to a discriminatory transfer, and that Kiewit and Mass/Reid were joint employers of the grievant. Although the argument is couched in terms of the arbitrator's authority, the real substance of the complaint is that the arbitrator drew erroneous legal conclusions.

█ The FAA does not authorize vacating an arbitrator's decision on these grounds. This Court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). This Court "may not supplant the arbitrator's determination of the merits of a contract dispute, even if it finds that determination to be erroneous." *Labor Relations Div. of Construction Indus. of Massachusetts v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 379,* 29 F.3d 742, 745 (1st Cir.1994). Rather, the only determination to be made is whether the arbitrator's construction of the PLA is in any way plausible. *See Misco,* 484 U.S. at 36–38, 108 S.Ct. 364; *El Dorado Technical Servs. v. Union General De Trabajadores de Puerto Rico,* 961 F.2d 317, 319 (1st Cir.1992); *see also Wheelabrator Envirotech Operating Servs. v. Massachusetts Laborers Dist. Council, Local 1144,* 88 F.3d 40, 44 (1st Cir.1996) (concluding an arbitrator's decision can be vacated only if it is " '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact' ") (quoting *Advest, Inc. v. McCarthy,* 914 F.2d 6, 8–9 (1st Cir.1990) (citations omitted)). The arbitrator acted well within the permissible range of judgment.

As to the estoppel issue, the arbitrator concluded that Kiewit was estopped from complaining about the timeliness of the filing of the grievance for two reasons. First, he found on the evidence presented to him that Kiewit and Mass/Reid had "attempted to thwart the normal processing of the grievance" and that their "intransigence" had delayed the grievance and therefore ought not be allowed to object to its timeliness as a result. Compl. /Mot. To Vacate Arbitration Award, Ex. A at 17–18. Second, as Kiewit had not raised the issue at earlier steps in the grievance process, the arbitrator concluded that the issue should not be raised for the first time in the arbitration. *Id.* at 18.

Both determinations were plausible on the evidence.

The principal point of contention was whether the grievant had been disciplined without just cause. The arbitrator first resolved factual disputes and then, on the facts as he found them, concluded that the transfer of the grievant had been unjustified and was discriminatory in that it represented retaliation against the grievant's previous exercise of protected rights. *Id.* at 18–20. Those decisions were well within the authority of the arbitrator.

Finally, the arbitrator found on the facts as he resolved them that Kiewit exercised "effective control over the day to day activities of the electricians employed by" Mass/Reid, and therefore should be considered a joint employer with Mass/Reid of the grievant. Neither the factual resolution nor the legal conclusion was implausible.

Kiewit undoubtedly would prefer that this Court weigh and measure the reasons supporting each contested conclusion. However, to do so necessarily involves reviewing the merits of the arbitrator's decision. It does not matter that there might be appealing alternate conclusions that could be drawn. The arbitrator's choice among plausible conclusions is not open to judicial oversight. *El Dorado Technical Servs.*, 961 F.2d at 320. "If the rule were otherwise, the process of arbitration would be reduced to an empty exercise." *Id.* The parties must live with the decisions of the arbitrator; because they "have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco,* 484 U.S. at 37–38, 108 S.Ct. 364.

### Conclusion

The complaint to vacate the award cannot succeed on the grounds asserted. The defendant's counterclaim to that effect is meritorious. Accordingly, the defendant's motion for summary judgment on it's counterclaim is GRANTED. The arbitrator's award is CONFIRMED.

It is SO ORDERED.