JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrente, *v.* AUTORIDAD DE COMUNICACIONES DE PUERTO RICO, demandada.

*Número:* O-80-676        *Resuelto:* 30 de abril de 1981

*Irma Rodríguez Justiniano, César A. Vélez Miranda, Juan Antonio Navarro* y *Luis O. Osorio Díaz,* abogados de la Junta de Relaciones del Trabajo de Puerto Rico; *Benny Franquie Cerezo* y *Raúl Rodríguez Santiago,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

La Junta de Relaciones del Trabajo, amparada en el Art. 9, inciso (2) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 70(2),([1]) nos pide que pongamos en vigor un laudo de arbitraje en virtud del cual se concluyó que el despido de la Sra. Ana M. González como operadora de cuadro telefónico de la Autoridad de Comunicaciones no estuvo justificado.

---

([1]) Dispone dicho inciso (2) en su apartado (c):

"(c) A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje."

Conforme al acuerdo de sumisión presentado al árbitro, éste dispuso como remedio la reinstalación de dicha empleada a su trabajo y el pago de los ingresos que haya dejado de percibir. La Autoridad ha comparecido en autos a oponerse a la solicitud de la Junta. Resolvemos sin más trámite conforme lo autoriza la Regla 50 de nuestro Reglamento. Como veremos más adelante, el árbitro fue extremadamente rígido en la exclusión de pruebas, constituyendo ello una desviación del debido procedimiento de ley que impide poner en vigor el laudo.

Surge del expediente ante nos que la Autoridad concedió licencia sin sueldo a la Sra. González por el período entre el 12 de junio y el 21 de octubre de 1979, complaciendo solicitud de ella en que invocó razones de enfermedad. No fue hasta el 29 de octubre que ella se reintegró al trabajo. No había solicitado prórroga de la licencia. Presentó certificado médico al efecto de que podía empezar a trabajar el 29 de octubre.

El despido de la empleada se produjo por carta del patrono de 11 de diciembre de 1979. Se invocó como razón para ello que durante la licencia concedida, ella trabajó para la Puerto Rico Distillers, Inc. Obra en los autos una carta del Director Interino de Personal de esta firma, dirigida a la División de Personal de la Autoridad de Comunicaciones, en que informa que la Sra. Ana M. González "desempeñó el trabajo de recepcionista en nuestras facilidades de Caguas, durante el período del día 20 de agosto hasta el día 22 de octubre de 1979".

Dispone el convenio colectivo vigente para las fechas indicadas, Art. XVI, Sec. 7, inciso (b):

(b) Bajo ningún concepto se concederá licencia sin sueldo como medio de retenerle el puesto a un trabajador mientras prueba fortuna en otro campo.

El inciso (c) de esa misma sección dispone:

(c) Cuando un trabajador regular haya agotado sus vacaciones por enfermedad, la Autoridad podrá concederle vacaciones sin sueldo por razón de enfermedad o estudios por un período no

mayor de 6 meses o por servicio militar conforme a las leyes establecidas; *entendiéndose que en los casos de enfermedad y estudio el trabajador cesará en su puesto si no regresa al término concedídole.* (Énfasis nuestro.)

En su decisión, el árbitro hizo constar lo siguiente:

Durante los procedimientos de rigor, el Patrono trató de establecer por medio de una carta firmada por el Sr. A. Martín Vélez, Director de Personal Interino de la Puerto Rico Distillers, (véase exhibit 5 del Patrono), y por medio del testimonio de la Sra. Ida M. Ramos, Directora de Relaciones Industriales de la Autoridad de Comunicaciones, que la Sra. Ana M. González Bernazard había trabajado para la Puerto Rico Distillers mientras estuvo disfrutando de su licencia sin sueldo. La Unión objetó que se aceptara en evidencia la carta firmada por el señor A. Martín Vélez por el fundamento de que el aceptarla era contrario al debido proceso de ley por cuanto se estaba privando a la querellante de su derecho a confrontarse con la persona que había escrito dicha carta. El árbitro aceptó la carta por el valor probatorio que la misma podría tener, pero es evidente que, frente a la objeción oportuna de la Unión dicha carta carece de valor probatorio alguno. También se opuso la Unión a que la testigo del Patrono, Sra. Ida M. Ramos, testificara sobre lo que le había dicho por teléfono el señor A. Martín Vélez por el fundamento de que su testimonio sobre ese extremo constituía prueba de referencia. Dicha objeción también fue declarada con lugar por el árbitro. El Patrono pidió entonces al árbitro que citara al Sr. Martín Vélez para que compareciera a la vista del caso. Ante esta petición del Patrono el árbitro resolvió que no tenía autoridad para obligar al Sr. Martín Vélez a comparecer al procedimiento de arbitraje.

Así las cosas, no hay prueba directa alguna ante el árbitro para establecer que la querellante usó indebidamente la licencia sin sueldo que le concedió el Patrono. (2)

---

(2) Es de notarse que bajo el Art. XIII, Sec. 3(f) del Convenio, invocado por la Autoridad, se dispone:

"(f) El Comité de Querellas, compuesto por los representantes de las partes y/o el Quinto Miembro tendrán facultades para celebrar vistas, tomar juramentos, requerir la comparecencia de testigos, expedir citaciones y requerir toda aquella información o prueba que estimare necesaria para la solución del caso ante él se radique."

Más adelante expresó el árbitro lo siguiente:

En este caso la querellante no tenía que probar nada. Era el Patrono el que estaba en la obligación de venir preparado a la vista del caso y establecer con prueba de primera mano que la querellante había incurrido en la falta imputada y que dicha falta ameritaba la sanción del despido.

Como cuestión de principio el árbitro está totalmente de acuerdo de que un empleado público que obtenga un beneficio mediante engaño o mentiras empaña la imagen del servicio público y su conducta es, a todas luces, meritoria de sanción disciplinaria. Pero una cosa es la imputación de una ofensa y otra es la prueba del caso. Aquí no ha habido prueba ante el árbitro para sostener la imputación que ha hecho el Patrono a la querellante.

I

El 29 de agosto de 1980 la Autoridad instó demanda contra la Unión ante el Tribunal Superior, Sala de San Juan (caso número 80-4646), en que impugna la validez del laudo. Alega falta del debido procedimiento de ley durante la vista, que es una de las posibles causas de nulidad de un laudo de arbitraje. *Junta Relaciones del Trabajo* v. *N. Y. & P.R. S/S. Co.*, 69 D.P.R. 782 (1949); *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143, 155 (1974); *J.R.T.* v. *Otis Elevator Co.*, 105 D.P.R. 195, 199 (1976). Cerca de cuatro meses más tarde —4 de diciembre— es que comparece la Junta ante nos para que pongamos en vigor el laudo. La Autoridad nos pide que nos abstengamos de considerar la petición hasta tanto se ventile y resuelva el pleito incoado en el Tribunal Superior, o en la alternativa, que resolvamos que el laudo es nulo.

De ordinario, la deferencia que debemos al Tribunal de Primera Instancia nos obligaría a abstenernos de entrar en los méritos de una cuestión pendiente ante dicho tribunal. Se trata aquí, sin embargo, de una situación que no amerita prueba y que podemos resolver, ahorrando así tiempo y esfuerzo al Tribunal Superior.

## II

En todo proceso adjudicativo, sea de naturaleza judicial, administrativa o de cualquier índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. Las reglas procesales y en particular las de evidencia, persiguen viabilizar ese propósito; no obstaculizarlo. En los procesos judiciales, en que aplica nuestro moderno ordenamiento sobre el ofrecimiento, admisión y evaluación de las pruebas, es decir, las Reglas de Evidencia de 1979, [3] se instituye como pauta interpretativa la siguiente:

Regla 2. Interpretación

Las disposiciones de estas reglas se interpretarán flexiblemente y de forma que garanticen una solución justa, rápida y económica a cualquier problema evidenciario. El fin último de estas reglas es el descubrimiento de la verdad en todos los procedimientos judiciales.

Esa norma es mucho más liberal cuando de aplicar el derecho probatorio a los procesos administrativos se trata. Y es particularmente más liberal en los procesos sobre arbitraje, en que debe prevalecer la flexibilidad y la informalidad de manera que todo aquello que sea pertinente a la controversia tenga acceso al conocimiento del árbitro. Así lo ha reconocido el Legislador para fines del arbitraje comercial, [4] y así se ha reconocido uniformemente en lo que toca al arbitraje obrero patronal. Véanse R. I. Abrams, *The Integrity of the Arbitral Process*, 76 Mich. L. Rev., pág. 231 y siguientes

---

[3] La Regla 1 dice:

"Estas reglas se conocerán como Reglas de Evidencia de Puerto Rico y serán aplicadas en todas las salas del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico en procedimientos de naturaleza civil y criminal."

[4] La Ley núm. 376 de 8 de mayo de 1951 dispone como sigue en su Art. 17, segundo párrafo, 32 L.P.R.A. sec. 3217:

"Los árbitros decidirán la pertinencia de la prueba ofrecida por las partes y la aceptación de la misma, sin tener que ajustarse a las reglas de evidencia."

(1977); F. Elkouri y E. Elkouri, *How Arbitration Works*, 3ra ed., Washington, D.C., The Bureau of National Affairs, Inc., 1973, págs. 252–295; O. K. Fraenkel, *Procedural Aspects of Arbitration*, 83 U. Penn. L. Rev. 226–245 (1934); D. Nolan, *Labor Arbitration Law and Practice*, St. Paul, Minnesota, West Publishing Co., 1979, págs. 92–94. Son particularmente atinentes a la controversia ante nos las siguientes expresiones del profesor Abrams en su citada monografía, pág. 236:

Tradicionalmente, el arbitraje ha tenido gran aceptación por su flexibilidad e informalidad. Se presume que el árbitro, como instrumento seleccionado por las partes, se rige únicamente por el acuerdo entre éstas. El árbitro es un solucionador de problemas itinerante que goza de la confianza de la unión y la gerencia. Es contratado por las partes para que resuelva de manera práctica e inteligente una disputa que ellos no pueden resolver entre sí. En el procedimiento de arbitraje no se aplican ni la doctrina de *stare decisis* ni las reglas de evidencia. Este procedimiento ha tenido una buena acogida por lo económico, rápido e informal. (Traducción nuestra.)

Más adelante, en la pág. 252, dice el profesor Abrams:

No se debe permitir que la objeción a la prueba de referencia, la cual es común en procedimientos de arbitraje, impida la presentación de dicha prueba. Los cambios naturales de empleados pueden ocasionar que algunos testigos no estén disponibles para declarar. Si el testimonio de una persona que no está presente en la vista puede influir significativamente sobre la decisión final del árbitro, éste ciertamente debe inquirir sobre su paradero y procurar que testifique. No obstante, ante la alternativa de escuchar o no escuchar la prueba de referencia, el árbitro debe optar por lo primero. (Traducción nuestra.)

Hemos reconocido entre las causas de nulidad de un laudo de arbitraje, la violación del debido procedimiento de ley. Véanse *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.*, supra y demás casos citados antes, en la pág. 883. Si bien la decisión sobre una cuestión de admisión de pruebas no

está entre las más frecuentes causas para dejar sin efecto un laudo, si tal decisión tiene el alcance de impedir que se conozca la verdad y se haga justicia, equivale a una violación del debido procedimiento de ley. Véase Nolan, *op. cit.*, pág. 93, y casos allí citados, y véase la monografía titulada *Due Process Considerations in Grievance Arbitration Proceedings*, 2 Hastings Constitutional Law Quarterly, 519 a 545 (1975).

En el caso que ahora consideramos el patrono alegó como justificación del despido de la Sra. González que ella trabajó para otra empresa mientras disfrutaba de licencia por motivos de supuesta enfermedad. No aparece del expediente ante nos ni se nos ha planteado que ella negara esa alegación. La carta suscrita por el Director Interino de Personal de la Puerto Rico Distillers era un documento oficial que equivalía a un principio de prueba pertinente a la cuestión y que debió admitirse, o cuando menos, debió accederse a citar a dicho funcionario para que fuera oído sobre la cuestión. La liberalidad en admitir prueba hace mucho menos vulnerable la decisión del árbitro que el rechazo de prueba pertinente. Elkouri, *op. cit.*, pág. 256. (⁵)

---

(⁵) Compárese *Harvey Aluminum* v. *United Steelworkers of America*, 263 F.Supp. 488 (D.C. Cal. 1967).

Es de notarse que la *Uniform Arbitration Act* propuesta por la *National Conference of the Commissioners on Uniform State Laws*, con la aprobación de la *American Bar Association*, contiene la siguiente disposición:

"Section 12. (*Vacating an Award*)

"(a) Upon application of a party, the court shall vacate an award where:

". . . . . . . .

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party . . . ."

27 LA 909, 910; Nolan, *op. cit.*, Apéndice 7, pág. 340; Updegraff & McCoy, *Arbitration of Labor Disputes* (BNA Incorporated, Washington, D.C.), Apéndice C, pág. 286.

Bajo las circunstancias aquí presentes, la actuación del árbitro violó el debido procedimiento de ley y su laudo no puede prevalecer y hacerse efectivo.

*Se dictará sentencia de conformidad con lo aquí expuesto.*