ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| YAMARIS DOMENECH BORRERO<br><br>Recurrida<br><br>V.<br><br>TRIPLE-S PROPIEDAD, INC. Y R&R Repair Services, LLC<br><br>Parte con Interés | TA2025RA00019 | Revisión Judicial procedente del Departamento Asuntos al Consumidor, Oficina Regional de Arecibo<br><br>Caso Núm.: ARE20240006479<br><br>Sobre: Contrato |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 28 de agosto de 2025.

Comparece R&R Repair Services, LLC ("R&R Repair" o "Recurrente") y solicita que revisemos la Resolución emitida el 13 de febrero de 2025[1] por el Departamento de Asuntos del Consumidor ("DACo" o "Agencia"). En esa ocasión, DACo ordenó al Recurrente a reparar todo lo relacionado con las filtraciones en la vivienda de la señora Yamaris Domenech Borrero ("Sra. Borrero" o "Recurrida")

Por los fundamentos que exponemos a continuación, se *revoca* la Resolución recurrida.

-I-

El 12 de julio de 2024, la Sra. Domenech presentó una *Querella*[2] contra R&R Repair y Triple-S Propiedad. En esa ocasión, la Recurrida alegó incumplimiento de contrato y reclamó la cantidad de $6,387.00. En

---

[1] Notificada el 14 de febrero de 2025.
[2] *Véase* Apéndice 4 del recurso de revisión administrativa, págs. 19-24.

síntesis, la Recurrida indicó que compró una propiedad en enero de 2024 y contrató al señor Carlos Rivera ("Sr. Rivera") para que sellara el techo de la residencia. Luego de finalizado el trabajo, la Recurrida se comunicó con el Sr. Rivera para indicarle que continuaba con filtraciones en la residencia. En respuesta a ello, el Sr. Rivera acudió a la propiedad a fin de reparar las filtraciones. Sin embargo, según alega en la Querella, el problema continuó y al no obtener respuesta del Recurrente, la Sra. Domenech acudió a DACo solicitando los arreglos correspondientes o la devolución del dinero.

El 19 de agosto de 2024, R&R Repair presentó su *Contestación a Querella*[3] y alegó haber cumplido con las normas de calidad establecidas en la industria. Además, el Recurrente señaló que no existe nexo causal entre los daños alegado por la Sra. Domenech y los servicios rendidos por R&R Repair. Así las cosas, el 29 de agosto de 2024, el señor Edwin Rodríguez López, Técnico de Investigación, llevó a cabo una inspección en la residencia de la Sra. Domenech. El 3 de septiembre de 2024, el Técnico de Investigación emitió una *Notificación de Informe de Inspección*[4]. Según alega el Recurrente, dicho informe no le fue entregado a su representante legal, a pesar de este haber comparecido oficialmente. Cónsono con ello, el 20 de septiembre de 2024, el Recurrente presentó una *Moción Solicitando Notificación de Informe*[5]. Según se alega en el recurso de revisión, la moción solicitando el informe no fue

---

[3] *Íd.*, Apéndice 5, págs. 26-28.
[4] *Íd.*, Apéndice 7, págs. 34-38.
[5] *Íd.*, Apéndice 8, págs. 41-42.

resuelta por DACo y el Recurrente nunca fue notificado del Informe de Inspección.

Posteriormente, el 11 de febrero de 2025 se celebró una Vista Administrativa. El 13 de febrero de 2025, DACo emitió una *Resolución*[6] en la que hizo las siguientes *Determinación de Hechos*:

1. Según el documento de querella, el día 4 de enero del 2024 la querellante contrato [sic] a la corporación querellada para que sellara e impermeabilizara el techo de su casa de vivienda que ubica en el barrio ALMIRANTE NORTE, VEGA BAJA, PR porque tenia [sic] filtraciones de agua hacia el interior.
2. En el acto de vista administrativa la querellante no especifico [sic] el precio pagado por el contrato de obra.
3. Según el informe de investigación de esta agencia, la casa de vivienda de la querellante tiene y continua [sic] con filtraciones de agua hacia el interior en las áreas indicadas en el informe no objetado. Por lo que la obra de sellar el techo no ha terminado. La querellante le solicito [sic] a los funcionarios del negocio querellado que le cumplieran con diligencia y responsabilidad profesional los términos del contrato de obra.[7]

De conformidad con tales determinaciones, la Agencia le concedió veinte (20) días a la parte recurrente para que "[…]*repare satisfactoriamente todo lo relacionado a filtraciones de agua hacia el interior en la casa de vivienda de la querellante* […]"[8].

Inconforme con dicha determinación, el 25 de febrero de 2025, el Recurrente presentó una *Moción de Reconsideración*[9]. Mediante dicha solicitud, R&R Repair alegó que la "*Resolución contiene determinaciones que no fueron objeto de testimonio, ni están sustentadas con prueba desfilada en la Vista Adjudicativa*"[10].

---

[6] *Íd.*, Apéndice 1.
[7] *Íd.*, pág. 2.
[8] *Íd.*, pág. 4.
[9] *Íd.*, Apéndice 2, págs. 8-11.
[10] *Íd.*, pág. 8.

Además, indicó que en el testimonio de la Sra. Domenech esta señaló que, luego del trabajo realizado por R&R Repair, llevó a cabo la instalación de una tubería sobre el techo y perforó el techo para hacer una conexión eléctrica del calentador. El Recurrente alegó que dicha prueba no fue controvertida. Finalmente, según surge de la moción de reconsideración, el juez invocó su "experiencia administrativa" para concluir que la obra de sellar el techo no ha terminado. Siendo este un asunto que no fue objeto de prueba, el Recurrente solicita que se elimine de las determinaciones de hechos.[11] El 7 de marzo de 2025, DACo presentó una *Resolución Interlocutoria y Orden*[12] en la que tomó conocimiento y acogió la solicitud de reconsideración. En consecuencia, los términos de revisión judicial quedaron suspendidos hasta tanto la Agencia atendiera la moción ante sí dentro del término jurisdiccional de noventa (90) días, a partir de la fecha de radicación. El 28 de mayo de 2025[13], DACo emitió una *Resolución en Reconsideración*[14] en la que declaró *No Ha Lugar* la moción de reconsideración presentada por el Recurrente. Además, le concedió un término de treinta (30) días para reparar todo lo indicado en el informe del investigador de DACo. De incumplir con lo anterior, tendría que reembolsar la cantidad total de la obra, a saber: $6,387.00.

El Recurrente alega que DACo perdió jurisdicción sobre el asunto, toda vez que no emitió su determinación dentro del término jurisdiccional de

---

[11] *Íd.*, pág. 10.
[12] *Íd.*, Apéndice 3, págs. 13-14.
[13] Notificada el 29 de mayo de 2025.
[14] *Véase* Apéndice 11, págs. 52-57.

noventa (90) días. Inconforme con la determinación, el 25 de junio de 2025, R&R Repair acudió ante este Tribunal mediante recurso de revisión administrativa e hizo los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL JUEZ ADMINISTRATIVO AL INCLUIR DETERMINACIONES DE HECHO QUE NO ESTÁN SUSTENTADAS CON LA PRUEBA DESFILADA.

> SEGUNDO ERROR: ERRÓ EL JUEZ ADMINISTRATIVO AL NO APLICAR EL PRINCIPIO DE QUE LA PARTE QUERELLANTE TIENE EL PESO DE LA PRUEBA PARA DEMOSTRAR SUS ALEGACIONES.

> TERCER ERROR: ERRÓ EL JUEZ ADMINISTRATIVO AL INVOCAR UNA SUPUESTA "EXPERIENCIA ADMINISTRATIVA" PARA INCLUIR DETERMINACIONES DE HECHO SUSTANCIALES QUE NO FUERON OBJETO DE PRUEBA.

> CUARTO ERROR: ERRÓ EL JUEZ ADMINISTARTIVO AL VIOLAR EL DERECHO CONSTITUCIONAL AL DEBIDO PROCESO DE LEY, CUANDO INCLUYÓ DETERMINACIONES NO BASADAS EN PRUEBA SO PRETEXTO DE SU EXPERIENCIA, LO CUAL DA AL TRASTE CON EL PRINCIPIO DE ADJUDICACIÓN IMPARCIAL.

> QUINTO: ERRÓ EL JUEZ ADMINISTRATIVO AL NO NOTIFICAR AL ABOGADO DE LA QUERELLADA DEL INFORME DE INSPECCIÓN RENDIDO POR FUNCIONARIO DE LA AGENCIA.

> SEXTO: ERRÓ EL JUEZ ADMINISTRATIVO DACO [SIC] AL EMITIR "RESOLUCIÓN SOBRE MOCIÓN DE RECONSIDERACIÓN" SIN TENER JURISDICCIÓN PARA ELLO, POR HABER EXPIRADO EL PLAZO DISPUESTO EN LEY.

-II-

**A. Ley Orgánica del Departamento de Asuntos del Consumidor**

El DACo fue creado por virtud de la Ley Núm. 5 de 23 de abril de 1973, según enmendada[15], con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Entre las funciones que tiene esta agencia se encuentran las siguientes:

---

[15] 3 LPRA § 341, et seq.

dictar las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas ante su consideración; conceder los remedios procedentes conforme a derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquier remedio legal que fuera necesario para hacer efectivos los propósitos de la ley, entre otros.[16]

El propósito detrás de la aprobación de DACo y su ley habilitadora fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equipare el poder de los consumidores con el de los proveedores de bienes y servicios.[17] Para cumplir tales fines, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie su uso eficiente por parte de personas legas.[18]

Por su parte, el Tribunal Supremo ha reconocido el carácter informal y flexible que distingue a los procesos administrativos y permite que el juzgador de los hechos conozca toda la información pertinente para dilucidar la controversia que tiene ante sí, sin necesidad de sujetar el proceso a los moldes rígidos de dichas reglas. A pesar de ello, los principios

---

[16] *Véase* Artículo 5, 3 LPRA § 341 (d), Artículo 8, 3 LPRA § 341 (g) y Artículo 10, 3 LPRA § 341 (i); *Suárez Figueroa v. Sabanera Real*, 173 DPR 694, 704-705 (2008); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-767, 769 (1997).
[17] *Residentes Pórticos v. Compad,* 163 DPR 510, 520 (2004).
[18] *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 DPR 807, 821 (1988).

fundamentales de las reglas procesales y de evidencia podrán utilizarse en estos procesos mientras no sean incompatibles con la naturaleza de los mismos.[19]

Ahora bien, debido a que el objetivo de la adjudicación administrativa es proveer un sistema justo, práctico y flexible, ha sido reconocido que las normas del debido proceso de ley no se aplicarán dentro del campo administrativo con la misma rigurosidad que se aplican dentro de la adjudicación judicial.[20] Además, las Reglas de Evidencia[21] tampoco aplicarán en las vistas administrativas de manera rigurosa, no importa la naturaleza del procedimiento.[22] A pesar de lo anterior, es menester señalar, que la Sección 3.13(e) de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* ("LPAUG")[23] dispone que las Reglas de Evidencia "… *no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.*"[24]

Por otra parte, en lo referente a los procedimientos adjudicativos, la Sección 3.1 dispone, en lo aquí pertinente, lo siguiente:

> En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:

---

[19] *J.R.T v. Aut. de Comunicaciones*, 110 DPR 879, 884 (1981); *Martínez v. Tribunal Superior*, 83 DPR 717, 720 (1961); *Industria Cortinera, Inc. v. Puerto Rico Telephone Co.*, 132 DPR 654, 660 (1993)

[20] *Almonet et al. v. Brito*, 156 DPR 475, 481 (2002).

[21] Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 101 et seq.

[22] *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996); *López Vives v. Policía de Puerto Rico*, 118 DPR 219, 231 (1987).

[23] Ley Núm. 38 de 30 de junio de 2017, según enmendada.

[24] *Véase Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*("LPAUG"), Sección 3.13, 3 LPRA § 9653.

> (A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
> (B) Derecho a presentar evidencia
> (C) Derecho a una adjudicación imparcial
> (D) Derecho a que la decisión sea basada en el expediente.[25]

## B. Deferencia administrativa

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[26] ("LPAUG") autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[27] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[28] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

---

[25] *Íd.*, Sección 3.1, 3 LPRA § 9641.
[26] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[27] *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *O.E.G. v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[28] *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[29]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[30] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[31] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[32] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia*

---

[29] *Íd.; Véase*, además, *Super Asphalt v. AFI y otro*, supra, pág. 819.

[30] *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127.

[31] *Íd.*

[32] *O.E.G. v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217.

*sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[33] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[34]

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[35] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[36] Ahora bien, nuestro más alto foro ha establecido que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[37]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante*

---

[33] *Rolón Martínez v. Supte. Policía*, supra, pág. 36.
[34] *Íd.; O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra.
[35] *Véase* Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627.
[36] *Íd.*
[37] *Torres Rivera v. Policía de PR*, supra, a las págs. 627-628; *O.E.G. v. Martínez Giraud*, supra, pág. 90.

*actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[38]

-III-

Los primeros cuatro errores planteados por el Recurrente hacen referencia a una violación del debido proceso de ley debido a que el juez administrador invocó su "*experiencia administrativa*" para hacer determinaciones de hechos. Por tratarse de errores que están íntimamente relacionados, procedemos a atenderlos de manera conjunta.

Es harto conocido que las determinaciones administrativas gozan de una presunción de corrección. Sin embargo, tal presunción cede ante actuaciones arbitrarias, carentes de una base racional. En el caso de epígrafe, se celebró una Vista Adjudicativa a fin de determinar la responsabilidad, si alguna, de R&R Repair sobre las filtraciones continuas en la residencia de la Sra. Domenech. Al hacer las determinaciones de hechos, el juez no fundamentó su decisión en evidencia sustancial del expediente, sino que se basó en su experiencia administrativa. Si bien es cierto que en la esfera administrativa no aplican las reglas de evidencia de manera rigurosa, ello no es una carta en blanco para la concesión de remedios que no han sido justificados adecuadamente. No podemos perder de perspectiva que los procedimientos administrativos, a pesar de ser flexibles, persiguen la justicia de igual forma. Fundamentar una determinación <u>únicamente</u> en la experiencia administrativa resulta en un ejercicio arbitrario e irrazonable que lesiona el debido proceso

---

[38] *O.E.G. v. Martínez Giraud*, supra, pág. 91.

de ley. Como foro revisor nos corresponde evaluar las decisiones administrativas a base del criterio de razonabilidad, el cual evidentemente no se cumplió en el caso de marras. A tenor con lo anterior, concluimos que la Agencia cometió los errores uno, dos, tres y cuatro.

Por entender que la discusión de los primeros cuatro errores dispone de la totalidad del recurso, no entraremos a discutir los restantes errores señalados por la parte Recurrente.

-IV-

A tenor con los fundamentos antes esbozados, **_revocamos_** la determinación emitida por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones